UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

TRESSA BRINKLEY,

        Plaintiff,

v.

BOARD OF COMMISSIONERS OF
FRANKLIN COUNTY, OHIO, *et al.*,

        Defendants.

Case No. 2:12-CV-00469
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

## OPINION AND ORDER

Plaintiff, Tressa Brinkley, brings this action against Defendants Board of Commissioners of Franklin County, Ohio, Franklin County Sheriff's Office, Franklin County Sheriff Zach Scott, and Franklin County Assistant Prosecuting Attorneys Ron O'Brien and Denise DePalma. Plaintiff specifically alleges that Defendants have retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"); 42 U.S.C. §§ 1981 and 1983; and Ohio Revised Code §§ 4112.02(I) and 4.112.02(J). This matter is before the Court for consideration of Plaintiff's Motion for Preliminary Injunction. (ECF No. 13.) Plaintiff requests that the Court require Defendants to consent to arbitration proceedings concerning her termination. For the reasons that follow, Plaintiff's Motion for a Preliminary Injunction is **GRANTED** subject to the conditions set forth within this Opinion and Order.

### I. BACKGROUND

The relevant facts of this action are largely undisputed. The Franklin County Sheriff, at that time Sheriff James Karnes, terminated Plaintiff from her position as a detective on July 2, 2010, alleging regulatory violations for unbecoming conduct, lack of civility, and lying to

Internal Affairs. (Stip. Ex. A, ECF No. 18-1.) The discharge memorandum specifically states that Plaintiff used a homophobic slur to describe a co-worker and later lied about the incident to Internal Affairs during a February 2010 investigation. (*Id.*) Plaintiff maintains, and Defendants admit, that during the investigation of the underlying conduct the Sheriff's Office subjected Plaintiff to a polygraph examination.[1] (Compl. ¶ 13, ECF No. 1; Answer ¶ 13.)

Although Plaintiff was terminated in July 2010, Plaintiff learned of the impending termination—or at least that the Sheriff was considering termination—in May 2010. On May 27, 2010, Plaintiff filed charges with the Ohio Civil Rights Commission ("OCRC") and the United States Equal Employment Opportunity Commission ("EEOC") alleging race, gender, and retaliatory discrimination with regard to her termination. (*Id.* at ¶ 22.)

As part of her employment, Plaintiff was subject to a Collective Bargaining Agreement ("CBA") between the Sheriff's Office and the Fraternal Order of Police, Capital City Lodge No. 9 (hereinafter the "FOP"). (*See* Stip. Ex. J, ECF No. 18-9.) The CBA includes a grievance procedure, culminating in arbitration, through which either the employee or the FOP is entitled to dispute any interpretation/application of CBA provisions. (*Id.* at Art. 5.) Of particular importance to this matter, Section 5.3 of the CBA provides:

> Nothing in this Grievance Procedure shall deny bargaining unit members any rights available at law to achieve redress of their legal rights, however, once the grieving party elects as his remedy the State Personnel Board of Review the State Employment Relations Board or other legal action, (and the selected body takes jurisdiction), he is thereafter denied the remedy of the Grievance Procedure provided herein.

(*Id.* at Art. 5 § 5.3.)

---

[1] The parties, however, dispute the role polygraph results played in Plaintiff's ultimate disciplinary determination.

On July 7, 2010, Plaintiff, with the assistance of the FOP, filed a grievance disputing her termination.[2] (Stip. Ex. B, ECF No. 18-2.) Within the grievance, Plaintiff maintained that the Sheriff lacked just cause for her termination and that her termination was in violation of Section 6.8 (concerning polygraph examinations); Sections 6.10 and 7.3D (regarding notice and record requirements); Section 7.2 (requiring just cause for discipline and similarity in nature of discipline); Section 7.5 (outlining progressive discipline); and Section 7.11 (concerning work rules) of the CBA. (*Id.*; *see also* Stip. Ex. J.) Plaintiff did not maintain in her grievance that her termination was due to race, gender, or retaliatory discrimination.[3] (Stip. Ex. B.)

The Sheriff denied Plaintiff's grievance. (Stip. ¶ 3; Stip Ex. C, ECF No. 18-3.) The Chief Deputy Sheriff specifically concluded that the grievance should be denied pursuant to Section 5.3 of the CBA because Plaintiff was seeking redress, concerning her termination, through the OCRC. (Stip Ex. C.) Pursuant to the procedure outlined in the CBA, Plaintiff and the FPO appealed the grievance decision to arbitration. (*See* Stip. Ex. E, ECF No. 18-11.) The parties submit that, at this stage, the Sheriff's Office could have stipulated to the arbitrability of the grievance, but was also entitled to challenge the arbitrability of the grievance. (Stip. ¶ 9, ECF No. 18.) In briefing to the arbitrator, the Sheriff once again asserted that Plaintiff's grievance was not arbitrable pursuant to Section 5.3 of the CBA. (Stip. ¶ 5; *see also*, Stip. Ex. D, ECF No.

---

[2] As detailed further below, Plaintiff submits evidence relating to the merits of her grievance.

[3] As Defendants stress, however, the CBA indicates that she could have filed a grievance based on discrimination. Specifically, Section 4.1 of the CBA states, "[t]he employer and the [FPO] shall not unlawfully discriminate against any member of the bargaining unit on the basis of the member's age, race, color, sex, creed, religion, ancestry, marital status, national origin, handicap, political affiliation or disability." (Stip. Ex. J Art. 4 §4.1.)

3

18-4.) On February 11, 2011, the arbitrator dismissed Plaintiff's grievance, agreeing with the Sheriff that the grievance was not arbitrable, pursuant to Section 5.3 of the CBA, because Plaintiff had "elected to file a charge with the EEO/OCRC involving the same circumstances which lead to her removal."[4] (Stip. Ex. F, ECF No. 18-5.)

Plaintiff filed this action in May 2012. On September 4, 2012, Plaintiff filed her instant Motion for Preliminary Injunction. Plaintiff seeks to compel Defendants to resubmit to arbitration and refrain from invoking Section 5.3 of the CBA based on her filing of EEOC and OCRC claims. The Court held an initial conference at which the parties agreed to a briefing schedule and the filing of factual stipulations.[5] The parties filed their Stipulations on November 23, 2012, and subsequently submitted their response and reply briefing. Accordingly, this matter is now ripe for review.

## II. STANDARD

The decision whether or not to issue a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure falls within the sound discretion of the district court. *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 102 (6th Cir. 1982). In deciding whether to issue a preliminary injunction the Court must consider "(1) whether the

---

[4] The parties stipulate that the Sheriff's Office has successfully contested the arbitrability of grievances based on Section 5.3 of the CBA on previous occasions. (Stip. ¶ 10.) Furthermore, on at least one occasion, the Sheriff's Office successfully contested the arbitrability of a grievance under Section 5.3 on the ground that the employees in question had filed charges with the OCRC and EEOC. (*See id.* at ¶¶ 11–16.)

[5] Plaintiff originally requested an evidentiary hearing. In light of the parties stipulations, Plaintiff acknowledges that such a hearing is not necessary. Plaintiff continues to request oral argument. As detailed above, the facts of this case are largely undisputed. Moreover, the parties have thoroughly briefed the issues currently before the Court. In light of these circumstances, oral argument is unnecessary.

4

movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent [relief], (3) whether granting the [relief] would cause substantial harm to others, and (4) whether the public interest would be served by granting the [relief]." *Ne. Ohio Coal. for Homeless & Serv. Emp. Intern. Union, Local 1199*, 467 F.3d 999, 1009 (6th Cir. 2006). "[T]he four considerations applicable to preliminary injunctions are factors to be balanced and not prerequisites that must be satisfied." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (internal quotations omitted). "These factors simply guide the discretion of the court; they are not meant to be rigid and unbending requirements." *Id.* (internal quotations omitted). A stronger showing of likelihood of success is required as the other factors militate against granting relief, but less likelihood of success is required when they support granting relief. *Performance Unlimited, Inc. v. Questar Publ'rs, Inc.*, 52 F.3d 1373, 1385–86 (6th Cir. 1995).

### III. ANALYSIS

#### A. Likelihood of Success

##### 1. Applicable Law

The Court will first address whether Plaintiff has established a strong likelihood of success on the merits. Plaintiff maintains that given the undisputed nature of the relevant facts, she is likely to succeed on her retaliation claims pursuant to Title VII and Chapter 4112 of the Ohio Revised Code.[6]

---

[6] As detailed above, Plaintiff also brings claims pursuant to 42 U.S.C. §§ 1981 and 1983. Nevertheless, in moving for a preliminary injunction, Plaintiff focuses on her Title VII and Ohio Revised Code retaliation claims. Moreover, "Plaintiff's Ohio state law retaliation claims are analyzed in the same manner as her Title VII claims." *Adkison v. Procter & Gamble Co.*, No. 1:10–cv–85, 2011 WL 6371084, at *14 n.16 (S.D. Ohio Dec. 19, 2011). Accordingly, the Court will analyze Plaintiff's likelihood of success pursuant to Title VII.

5

Title VII prohibits an employer from "discriminat[ing] against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish retaliation, Plaintiff must demonstrate that (1) she engaged in protected activity, (2) her employer knew of the protected activity, (3) her employer took an adverse employment action; and (4) there was a causal connection between the protected activity and the adverse employment action. *Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 468–69 (6th Cir. 2012).

Based on the undisputed facts, three of these elements require little analysis. The filing of OCRC and EEOC claims is clearly protected activity. *See id.* at 469 (holding that participating in EEOC proceedings is one type of protected activity). Moreover, the Sheriff knew that Plaintiff had engaged in this conduct. Finally, the records before the Court demonstrate the Sheriff sought dismissal of Plaintiff's grievance as not arbitral, pursuant to Section 5.3 of the CBA, because Plaintiff had proceeded with OCRC and EEOC claims.

Consequently, the central issue before the Court is whether the actions of the Sheriff constitute adverse employment action for the purposes of Title VII. The United States Court of Appeals for the Sixth Circuit has held that "Title VII's anti-retaliation prong extends to adverse actions beyond the workplace, but only to those actions that are 'materially adverse, which in this context means [they] might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Pendley v. Fed. Mine Safety & Health Review Comm'n*, 601 F.3d 417, 428 (6th Cir. 2010) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68

6

(2006)). Accordingly the adverse action requirement applies an objective standard, and trivial action or petty slights are insufficient. *Burlington*, 548 U.S. at 69.

As the parties recognize, at least two Courts of Appeals have faced similar circumstances to those of this case. *See generally, E.E.O.C. v. Bd. of Governors of State Coll. & Univ.*, 957 F.2d 424 (7th Cir. 1992); *Richardson v. Comm'n on Human Rights & Opportunities*, 532 F.3d 114 (2nd Cir. 2008). In *Board of Governors*, the United States Court of Appeals for the Seventh Circuit determined that a collective bargaining agreement provision violated the anti-retaliation section of the Age Discrimination in Employment Act ("ADEA"). 957 F.2d at 431. The provision at issue specifically stated, "[i]f prior to filing a grievance hereunder . . . an employee seeks resolution of the matter in any other forum . . . the Board . . . shall have no obligation to entertain or proceed further with the matter pursuant to this grievance procedure." *Id.* at 426. The Seventh Circuit reasoned that "[w]hen an employee's participation in statutorily protected activity is the determining factor in an employer's decision to take adverse employment action, that action is invalid regardless of the employer's intent." *Id.* at 428. The Seventh Circuit ultimately held "[a] collective bargaining agreement may not provide that grievances will proceed to arbitration only if the employee refrains from participating in protected activity under the ADEA." *Id.* at 431.

The United States Court of Appeals for the Second Circuit, however, held in *Richardson* that withdrawal from arbitration under a similar collective bargaining agreement provision was not retaliation. 532 F.3d at 117. The provision at issue in *Richardson* stated that "disputes over claimed unlawful discrimination shall be subject to the grievance procedure but shall not be arbitrable if a complaint is filed with the Commission on Human Rights and Opportunities

7

arising from the same common nucleus of operative facts." *Id.* at 118. The Second Circuit reasoned that withdrawal from arbitration pursuant to such a provision was not an adverse employment action, but instead a "reasonable defensive measure" to avoid duplicative proceedings. *Id.* at 123–24. The *Richardson* Court further emphasized that the clause in question merely required an employee to make "a concrete choice, at a specific time," between filing a discrimination charge or pursuing arbitration. *Id.* at 124.

In addition to the Second and Seventh Circuits, a few other courts have faced similar issues with mixed results. *See, e.g., U.S. E.E.O.C. v. Chrysler Group, LLC*, No. 08–C–1067, 2011 WL 693642, at *12–13 (E.D. Wis. Feb. 17, 2011) (holding that staying a grievance procedure because of EEOC charges was not an adverse action because employees did not lose their right to grieve); *Wedding v. Univ. of Toledo*, 884 F. Supp. 253, 255 (N.D. Ohio 1995) (concluding that collective bargaining agreement holding in abeyance grievance procedure during resolution of EEOC charges was retaliatory) *rev'd on other grounds by Wedding v. Univ. of Toledo*, 89 F.3d 316 (6th Cir. 1996); *Portland State Univ. Chapter of Am. Ass'n of Univ. Professors v. Portland State Univ.*, 352 Or. 697, 723 (Or. 2012) (holding that collective bargaining agreement clause allowing a university to forego its grievance procedure if an employee resorted to another forum was facially discriminatory pursuant to Title VII).

The United States Court of Appeals for the Sixth Circuit has not directly reached this issue. Nevertheless, faced with differing circumstances, the Sixth Circuit suggested approval of *Board of Governors'* basic reasoning. *See E.E.O.C. v. SunDance Rehab. Corp.*, 466 F.3d 490, 497–98 (6th Cir. 2006). In *SunDance*, the Court held that the mere offer of a severance agreement that sought to waive an employee's right to file administrative charges was not

8

retaliatory action.[7] *Id.* at 500–01. In distinguishing the holding from *Board of Governors*, the Sixth Circuit provided as follows:

> In *Board of Governors*, the employer actually took an adverse action against the employee because the employee had pursued the statutorily protected activity of filing a charge with the EEOC. That action clearly constituted retaliation in violation of 29 U.S.C. § 623(d). While the Seventh Circuit addressed what it determined to be the facially retaliatory CBA provision that purported to authorize that action, that policy was before the Seventh Circuit because the employer had implemented it and had engaged in a retaliatory act.

*Id.* at 498.

Finally, the parties also direct the Court to two Supreme Court decisions addressing related issues. *See generally E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279 (2002); *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009). In *Waffle House*, the Supreme Court held that an agreement between an employer and employee to arbitrate disputes did not limit the remedies available to the EEOC in an enforcement action. 534 U.S. at 297. The Supreme Court emphasized that it would not "undermine the detailed enforcement scheme created by Congress simply to give greater effect to an agreement between private parties . . . ." *Id.* at 296. In *Pyett*, the Supreme Court held that "a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of federal law." 556 U.S. at 274. The Supreme Court acknowledged, however, that under the collective bargaining agreement in question employees would still be able to file discrimination claims with the EEOC, which could then choose to pursue judicial intervention. *Id.* at 272.

---

[7] The Sixth Circuit did not reach the issue of whether such an agreement in question was enforceable. *SunDance*, 466 F.3d at 500.

9

### 2. Application

Under the circumstances of this case, the Court finds that Plaintiff has demonstrated a strong likelihood of success on the merits of her claim. First, the actions of the Sheriff's Office in this case satisfy the definition of adverse employment action and the general requirements of a retaliation claim. Plaintiff invoked the CBA grievance procedure, ultimately resulting in arbitration, to resolve disputes over various CBA provisions. Notably, Plaintiff was not attempting to use the process to resolve her discrimination claims, but was instead attempting to enforce other rights under the CBA. It is undisputed that Plaintiff did not proceed to arbitration as to the merits of her contentions because she filed charges with the OCRC and EEOC. This is exactly the type of negative consequence that could dissuade a reasonable worker from filing such charges. Moreover, it is clear that the Sheriff sought dismissal of the arbitration proceedings because Plaintiff filed discrimination charges. In light of these facts, Plaintiff has demonstrated that she will likely succeed on her Title VII retaliation claims. *Cf SunDance*, 466 F.3d at 498 ("[T]he employer actually took an adverse action against the employee because the employee had pursued the statutorily protected activity of filing a charge with the EEOC. That action clearly constituted retaliation . . . .").

In reaching this decision, the Court finds it unnecessary to resolve the tension between the *Board of Governors* and *Richardson* decisions. Plaintiff has established a strong likelihood of success even applying the "reasonable defensive measure" approach to adverse employment action outlined in *Richardson*. In *Richardson*, the CBA provision in question was narrowly tailored to apply only to "disputes over claimed unlawful discrimination . . . ." 532 F.3d at 118. Here, however, Article 5 Section 5.3 of the CBA—at least as utilized—broadly applies to all

10

disputes under the CBA, not just duplicative proceedings. Tellingly, in this case, Plaintiff was not attempting to dispute the same claims in multiple forums. Instead, she chose to proceed on her discrimination claims in one setting (before the OCRC/EEOC) and her non-discrimination claims concerning her CBA rights in another (through the CBA grievance procedure). Under these circumstances, the Sheriff's broad application of the CBA provision goes beyond a reasonable defensive measure and is more accurately characterized as an adverse employment action. Rather than using the CBA provision as a mechanism to avoid relitigation of claims—forcing an employee to elect a forum for a particular claim—the Sheriff used the provision to penalize Plaintiff for her discrimination claims by withdrawing her ability to pursue other rights under the CBA.

It is beyond dispute that the OCRC and EEOC could not resolve any disputes arising under the CBA that were unrelated to claims of unlawful employment discrimination. It is true that *all* claims—statutory and contractual—could have been raised in a single arbitration. Plaintiff chose to bring her statutory claims before the OCRC and EEOC. She chose to bring her CBA claims to arbitration. This Court is not holding, at least in this case, that plaintiff has the right to two fora in which to litigate the same claims. Here, the claims are distinct and Plaintiff may pursue her statutory claims without forfeiting her right to arbitrate CBA claims.

Defendants suggest that they did not take an adverse employment action because they did not "block" Plaintiff's right to arbitration. (*See* Defs.' Resp. 9, ECF No. 21.) At the initial level, the Sheriff denied Plaintiff's grievance, without reaching the substantive merits, pursuant to Section 5.3 of the CBA. (Stip. ¶ 3; *see also* Stip Ex. C.) During arbitration, the Sheriff again advocated that the matter was not arbitrable under the provision. (Stip. ¶ 5.) Perhaps, most

importantly, Defendants concede that the Sheriff could have stipulated to the arbitrability of the grievance under the CBA. (Stip. ¶ 9.) Further, it is the operation and application of the CBA that has created the issue. Under these circumstances, the Court finds that the Sheriff took sufficient action to meet the adverse action requirement for retaliation.

Defendants also maintains that, with the proper planning, an employee could proceed with both a grievance and an EEOC/OCRC action under Section 5.3 of the CBA. Specifically, Plaintiff asserts that employees could seek to expedite arbitration proceedings so that, after a grievance determination, they could then timely pursue OCRC or EEOC claims. *See* Ohio Rev. Code § 4112.05(B)(1) (requiring that discrimination charges "shall be filed with the commission within six months after the alleged unlawful discriminatory practice was committed"). The Court is not convinced that this possibility saves application of the CBA provision under the circumstances of this case. As Plaintiff notes, the course of action Defendants propose comes with significant procedural hurdles. Employees with the foresight to refrain from filing OCRC/EEOC claims must still face the procedural hurdle of expediting the arbitration process. Here, even though the arbitrator did not decide the merits in this case, he did not reach his ultimate decision until over six months after Plaintiff was terminated. (*See* Stip. Ex. F.). The procedural obstacles that the CBA provision creates could dissuade a reasonable person from pursuing discrimination charges for fear of losing his or her CBA grievance rights.[8]

---

[8] Moreover, the CBA provision at stake here is broader than the provisions at issue in both *Chrysler Group* and *Wedding*, which only delayed the grievance process due to the filing of discrimination charges. *See Chrysler Group*, 2011 WL 693642, at *2; *Wedding*, 884 F. Supp. at 254.

12

## B. Irreparable Injury

With regard to the second preliminary injunction factor, irreparable injury, Plaintiff maintains that delay in proceeding to arbitration harmed her, and continues to harm her, in two different ways. First, Plaintiff maintains that, because of the nature of her profession, she is continually losing seniority, on-duty experience, training, and opportunity for advancement. Notably, the parties stipulate that since Plaintiff's termination there have been opportunities for promotion and open assignments for which Plaintiff would have been eligible as well as training opportunities that Plaintiff has missed. (Stip. ¶¶ 17–19.) Second, Plaintiff maintains that delay is harming her procedural right to arbitration. Specifically, Plaintiff notes that two relevant witnesses have died since her termination and that another witness has retired.

Under the second preliminary injunction factor, the Court must evaluate whether the movant "would be irreparably injured absent a preliminary injunction." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). "A plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Id.* (internal quotations omitted). "However, an injury is not fully compensable by money damages if the nature of the plaintiff's loss would make the damages difficult to calculate." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 550 (6th Cir. 2007). The standard requires not merely the "possibility" of irreparable injury, but instead "that irreperable injury is *likely* in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Relatedly, irreparable injury is harm that is "actual and imminent . . . rather than harm that is speculative or unsubstantiated." *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006). "In order to substantiate a claim that irreparable injury is likely to occur, a

13

movant must provide some evidence that the harm has occurred in the past and is likely to occur again." *Michigan Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991).

Based on the current record, the Court finds that Plaintiff has made a sufficient showing of irreparable injury to allow for injunctive relief. With regard to Plaintiff's first contention of irreparable injury, it is uncontested that Plaintiff has lost employment opportunities including chances for promotion, open assignments, and training. (*See* Stip. ¶¶ 17–19.) From this information, it is natural to infer that it is likely Plaintiff will continue to lose such opportunities if she does not receive immediate relief. Moreover, the Sixth Circuit has recently recognized, within the law enforcement setting, that "lost work experience and the opportunity to compete for promotions" may constitute irreparable injury for the purposes of injunctive relief. *Johnson v. City of Memphis*, 444 F. App'x 856, 860 (6th Cir. 2011). The Sixth Circuit specifically reasoned that "[b]ack pay could remedy Plaintiffs' injuries due to lost income alone, but the loss of experience and chances to compete for promotions are not easily valued."[9] *Id.*

Defendants stress, however, that it is unclear whether the relief requested will ultimately cure this injury. Specifically, Plaintiff is not directly seeking reinstatement through injunctive relief, but instead the opportunity to arbitrate. Accordingly, as Defendants emphasize, Plaintiff's alleged injury—the loss of various opportunities relating to her employment with the Sheriff's Office—will only have a practical effect if she is able to gain reinstatement through arbitration.

---

[9] Along similar lines, the Court finds that Plaintiff's concerns regarding seniority could be cured without immediate relief. Nevertheless, the loss of training and work experience, opportunities for advancement, and opportunities to compete for promotion are more difficult to value.

14

The Court is not convinced, however, that these circumstances preclude a finding of likely irreparable injury. Once again, it is undisputed that Plaintiff is losing work opportunities as time passes. Rather than challenging the likelihood of this injury, Defendants assertion goes to the likelihood of whether arbitration will ultimately remedy the injury. *Cf. Roche Diagnostics Corp. v. Med. Automation Sys., Inc.*, No. 1:10–cv–01718, 2011 WL 130098, at *4 (S.D. Ind. Jan. 14, 2011) (holding that when a plaintiff seeks a preliminary injunction "in aid of arbitration" the likelihood of success standard "does not require the plaintiff to show that he has a likelihood of prevailing on the merits at the arbitration stage"). The Court finds that the four balancing factors weigh in favor of a preliminary injunction despite the fact that reinstatement is not a certainty.[10]

Plaintiff's second contention of irreparable harm—damage to her procedural right to arbitrate—weighs in both directions. Unfortunately, some potential witnesses have passed away. Moreover, one witness has retired. Nevertheless, Plaintiff fails to make any specific showing that further delay will place other sources of evidence in jeopardy. Accordingly, Plaintiff's assertion of injury appears to rely heavily on speculation. At the same time, however, the Sixth Circuit has suggested that at least part of the benefit of arbitration is the timely resolution of disputes. *Cf. Ferro Corp. v. Garrison Indust., Inc.*, 142 F.3d 926, 933 (6th Cir. 1998) (recognizing "the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts") (quoting *Prima Paint Corp. v. Flood & Conklin Mfg.*, 388 U.S. 395, 403–04 (1967)). In

---

[10] It would be improper for the Court to reach the substantive merits of Plaintiff's grievance, and the Court will not do so at this time. *See Wedding v. Univ. of Toledo*, 89 F.3d 316, 319 (6th Cir. 1996) (reversing the district court for prematurely deciding an issue before the arbitrator had received an opportunity to consider the issue).

15

this manner, any further delay to arbitration will damage—in a way that is difficult to quantify—the value of Plaintiff's CBA right to arbitration.

Ultimately, given the circumstances of this case, and balancing the other preliminary injunction factors, the Court finds that Plaintiff has made a sufficient showing of irreparable injury to allow for injunctive relief.

### C. Harm to Defendants

With regard to the third preliminary injunction requirement, concerning whether relief would cause substantial harm to others, Defendants assert that forcing arbitration will result in the needless waste of government resources. The Court disagrees. Although the Court acknowledges the cost associated with such proceedings, in light of the other balancing factors, such costs are not significant enough to outweigh other considerations. Accordingly, the Court is not convinced that substantial harm to others weighs heavily against granting injunctive relief.

### D. Public Interest

The Court is also convinced that public interest weighs in favor of granting a preliminary injunction. By enacting the anti-retaliation provision of Title VII, Congress made it unlawful for an employer to discriminate against an employee based on the filing of a discrimination charge. *See* 42 U.S.C. § 2000e-3(a). Moreover, the Supreme Court has reinforced the importance of the EEOC investigation process. *See, e.g., Waffle House*, 534 U.S. at 296 n.11 ("We have generally been reluctant to approve rules that may jeopardize the EEOC's ability to investigate and select cases from a broad sample of claims); *cf. also, E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 69 (1984) ("[I]t is crucial that the Commission's ability to investigate charges of systemic discrimination not be impaired.").

16

Given the importance of the investigative process, and Congress' prohibition of retaliatory action, the Court finds that it is in the public interest to discourage retaliatory action based on the filing of EEOC/OCRC charges, even when such action is in line with the contractual intent of the parties. *Cf. Waffle House* 534 U.S. at 296 ("[W]henever the EEOC chooses from among the many charges filed each year to bring an enforcement action in a particular case, the agency may be seeking to vindicate a public interest . . . even when it pursues entirely victim-specific relief. To hold otherwise would undermine the detailed enforcement scheme created by Congress simply to give greater effect to an agreement between private parties that does not even contemplate the EEOC's statutory function.").

E.    **Relief**

For the reasons described above, and based on a balancing of the four relevant preliminary injunction factors, the Court finds preliminary injunctive relief appropriate. The Court must still, however, address the precise form of relief.

"The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *United Food & Commercial Workers Union, Local 1099 v. Sw. Ohio Reg'l*, 163 F.3d 341, 348 (6th Cir. 1998). The Sixth Circuit has recognized "that preservation of the court's ability to exercise meaningful review may require affirmative relief in order to prevent some future irreparable injury . . . ." *Id.* Notably, although Plaintiff requests a preliminary injunction, the situation is highly analogous to a motion to compel arbitration. *See Wedding*, 884 F. Supp. at 255–56 (considering whether to compel arbitration given the existence of a retaliatory CBA provision). When faced with a motion to compel, "[t]he court must determine whether the dispute is arbitrable, meaning that a

valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of the agreement."[11] *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 415–16 (6th Cir. 2011).

In this case, the relevant CBA provisions—absent application of Section 5.3—reflect an agreement between the FPO and Sheriff's Office to submit to a grievance procedure, culminating in arbitration, concerning any dispute over interpretation or application of the CBA. (*See* Stip. Ex. J Art. 5.) Accordingly, the Court directs Defendant Sheriff Scott to resubmit this matter to arbitration pursuant to the terms of the CBA.[12] During arbitration Defendant Sheriff Scott shall refrain from invoking Section 5.3 of the CBA based on Plaintiff's filing of EEOC/OCRC charges.

Plaintiff also requests broader injunctive relief enjoining Defendants from any interpretation of Section 5.3 of the CBA that would deter employees from filing EEOC and/or OCRC discrimination charges. The Court will not grant such relief at this time. Of particular importance, the Court has not reached the question of whether application of Section 5.3 may in

---

[11] Although the parties do not raise the issue, the Court notes that the Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq.*, limits the jurisdiction of federal courts to issue injunctive relief in labor disputes. *See* 29 U.S.C. §§ 101, 107. Nevertheless, the Supreme Court has recognized that the Norris LaGuardia Act does not deprive federal courts of jurisdiction to compel arbitration of grievance disputes. *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448, 457–59 (1957). Moreover, Congress expressly exempted Title VII from the Norris-LaGuardia Act. 42 U.S.C. § 2000e-5(h).

[12] The parties dispute whether all of the Defendants are proper parties to this lawsuit. The Court finds it unnecessary to resolve the dispute at this time. Defendant's concede that Sheriff Scott, in his official capacity, is a proper Defendant to this lawsuit. The Court anticipates that injunctive relief solely directed at Sheriff Scott will provide adequate relief to Plaintiff for the purposes of her Preliminary Injunction. Accordingly, the Court will direct injunctive relief specifically toward Sheriff Scott at this time.

some instances constitute reasonable defensive measures to avoid duplicative proceedings.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction is **GRANTED** subject to the conditions of this Opinion and Order. (ECF No. 13.) Defendant Sheriff Scott is **DIRECTED** to submit to arbitration, pursuant to the terms of the CBA, concerning Plaintiff's termination of employment.

**IT IS SO ORDERED.**

1-29-2013
**DATE**

**EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE**

19